UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| BRITTA E.,[1] <br><br> Plaintiff, <br><br> v. <br><br> FRANK BISIGNANO, <br>Commissioner of Social Security,[2] <br><br> Defendant. | Case No. 2:25-cv-00233-BFM <br><br> **MEMORANDUM OPINION AND ORDER** |

This case is before the Court for review of the decision of the Administrative Law Judge denying Plaintiff's applications for Social Security benefits. For the reasons discussed below, Plaintiff's request for remand (ECF 11) is granted and the decision of the Commissioner is reversed.

---

[1] In the interest of privacy, this Report and Recommendation uses only the first name and middle and last initials of the non-governmental party in this case.

[2] Frank Bisignano became the Commissioner of Social Security in May 2025 and is substituted as Defendant here pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

## I. PROCEDURAL HISTORY

In February 2020, Plaintiff applied for disability insurance benefits under Title II of the Social Security Act. (Administrative Record ("AR") 411-12.) Plaintiff alleged a disability onset date of August 1, 2014. (AR 411.)

Plaintiff's application was denied at the initial level of review and on reconsideration, after which Plaintiff requested a hearing before an Administrative Law Judge. (AR 112-138.) Following a hearing (AR 88-111), the ALJ issued an unfavorable decision finding that Plaintiff was not disabled. (AR 139-57.) On review, the Appeals Council vacated the ALJ's order and remanded the case to the ALJ. (AR 158-63.)

The ALJ held an additional hearing on July 16, 2024 (AR 69-87) and issued a second unfavorable decision (AR 31-44). The ALJ found at Step Two of the disability analysis[3] that Plaintiff had the severe impairment of lumbar degenerative disc disease. (AR 37.) The ALJ deemed other impairments, including Plaintiff's bilateral temporomandibular joint syndrome, obesity, and thoracic and lumbar spine dysfunction, to be nonsevere. (AR 37.)

At Step Three, the ALJ concluded that Plaintiff's conditions do not meet or medically equal the severity of any impairment contained in the regulation's Listing of Impairments—impairments that the Social Security Administration has deemed so severe as to preclude all substantial gainful activity and require a grant of disability benefits. (AR 38); *see* 20 C.F.R. pt. 404, subpt. P, app. 1.

Because Plaintiff's impairments were not severe enough to require an outright grant of benefits at Step Three, the ALJ proceeded to consider at Step Four whether Plaintiff's residual functional capacity—defined as what Plaintiff

---

[3] A five-step evaluation process governs whether a plaintiff is disabled. 20 C.F.R. §§ 404.1520(a)-(g)(1), 416.920(a)-(g)(1). The ALJ, properly, conducted the full five-step analysis, but only the steps relevant to the issue raised in the Complaint are discussed here.

2

can do despite her limitations—is such that she would be able to work. (AR 39-43.) The ALJ found that Plaintiff could perform light work with certain limitations: frequent climbing of ladders, ropes, and scaffolds and frequent stooping. (AR 39.) The ALJ found that her residual functional capacity would allow Plaintiff to perform light, unskilled jobs that existed in significant numbers in the national economy. (AR 43.) The ALJ thus found Plaintiff was not disabled and denied her claim. (AR 44.) The Appeals Council denied review of the ALJ's decision. (AR 4-20.)

Dissatisfied with the Social Security Administration's resolution of her claim, Plaintiff filed a Complaint seeking review in this Court. (ECF 1.) For the reasons set forth below, the Court reverses the Commissioner's decision.

### III.   STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), the Court reviews the Commissioner's decision to deny benefits to determine if: (1) the Commissioner's findings are supported by substantial evidence; and (2) the Commissioner used correct legal standards. *See Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Brewes v. Comm'r Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012). "Substantial evidence . . . is 'more than a mere scintilla.' It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (citations omitted); *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522-23 (9th Cir. 2014). To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998).

## IV. DISCUSSION

Plaintiff argues that the ALJ failed to present a clear and convincing reason to dismiss Plaintiff's testimony. (ECF 11 (Pl. Brief) at 4-15.[4]) The Court agrees that the ALJ's decision should be reversed and this matter remanded because the ALJ erred in his consideration of Plaintiff's subjective symptom testimony.

### A. Legal Framework

Where a claimant testifies about subjective medical symptoms, an ALJ must evaluate such testimony in two steps. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could "reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (citation and quotation marks omitted).

Second, if the claimant meets that first standard and there is no evidence of malingering, the ALJ can reject the claimant's testimony only by offering "specific, clear and convincing reasons for doing so." *Id.* (citation and internal quotation marks omitted). An ALJ "is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to the Social Security Act." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022) (citation and internal quotation marks omitted). At the same time, when an ALJ rejects a claimant's testimony, he must "specify which testimony [he] finds not credible, and then provide clear and convincing reasons, supported by evidence in the record," to support that determination. *Brown-Hunter v. Colvin*, 806 F.3d 487, 488-89 (9th Cir. 2015). General or implicit findings of credibility will not suffice; the ALJ must show his work. *Smartt*, 53

---

[4] For ease of reference, the Court refers to ECF-generated page numbers.

1 F.4th at 499; *see also Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014).

Judged by that standard, the ALJ's reasons and explanation for discounting Plaintiff's testimony about her lumbar disc disease symptoms were insufficient.

### B. Plaintiff's Testimony

Plaintiff testified about her impairments and the impact they had on her daily life. (AR 75-77.) She said that she had to leave her prior job, and could not reliably work, because she experienced lumbar pain that limited her ability to sit, stand, and walk. (AR 75-77.)

Plaintiff described a typical day: she began by walking approximately 30 to 40 feet to use the bathroom and brush her teeth. (AR 75-76.) The pain she experienced from those brief tasks caused her to spend the rest of the day in bed. (AR 76.) Plaintiff's partner did the grocery shopping, helped her bathe, washed her hair, cleaned, prepared meals, and did other daily chores. (AR 76.)

Plaintiff said that she had problems standing or walking back in 2019 (i.e., before the date last insured). (AR 76.) Plaintiff testified that she could stand or walk for approximately 15 to 30 minutes on a flat surface. (AR 76-77.) One of her caretakers gave her an assistive device, but she only used it a few times, to get up, and did not use it for mobility as using it caused her more pain. (AR 77.)

### C. The ALJ's Decision

The ALJ summarized Plaintiff's testimony and agreed that Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms." (AR 39.) The ALJ concluded, however, that Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (AR 39.)

The ALJ then summarized Plaintiff's treatment history: Plaintiff had had back surgery in 2011; underwent a physical therapy evaluation in 2014 and sought care for worsening back pain in 2015. (AR 40.) An examination conducted around that time reflected spasm and severe pain with range of motion. (AR 40 (citing AR 1350).)

Plaintiff was referred for physical therapy in July 2018, and was recertified in September 2018 and January 2019. (AR 40.) In November 2018, a physical examination reflected reduced range of motion and positive straight leg raise test. (AR 40.) An MRI taken that same month showed severe L4 and L5 degenerative disc disease. (AR 40.) Plaintiff was counseled on different treatment options, including surgical fusion. (AR 40.) She decided against surgery. (AR 40, citing AR 685 (December 2018 report noting that "[t]reatment options were discussed including surgical fusion. However at this time the patient wants to try a conservative approach for now before considering her surgical intervention."); AR 691-692 (December 2018 discussion regarding surgery, noting, in light of the risks involved, that Plaintiff wanted to proceed with facet blocks first).) Plaintiff received steroid injections in April 2019 (AR 40.) A May 2019 MRI again showed evidence of multilevel degenerative changes. (AR 40.) A straight leg raise test was positive at a June 2019 acupuncture visit (AR 40.)

Plaintiff received additional steroid injections in June and September 2019. (AR 40.) Her lumbar spine was tender at a July 2019 visit (ECF 40) and she received bilateral medial branch blocks in November 2019. (AR 40.) A straight raise leg test in June 2020 was, again, positive. (AR 40.)

After reciting this history, the ALJ concluded that Plaintiff's spine disorder "limits her to less than a full range of light work" but that no limitation beyond those contained in his residual functional capacity assessment was warranted. (AR 40.) He then listed several facts that, in his view, supported his

6

1    conclusion: he noted that Plaintiff had been dismissed from physical therapy in
2    2015 after failing to pursue it (AR 40 (citing AR 1472).) While a 2019
3    examination revealed marked lumbar tenderness, Plaintiff still had a stable
4    gait, full sensation, and negative straight leg raise test. (AR 40 (citing AR 682).)
5    When counseled on the option of spinal fusion surgery, she declined to pursue
6    that option and instead received injections. (AR 40 (citing AR 981.) Physical
7    examinations both before and after the date last insured "consistently revealed
8    normal gait and station, full motor strength, and full coordination." (AR 40.) She
9    was generally in no distress, and the examinations revealed no deficits in
10   sensation or reflexes. (AR 40.) And finally, the records did not reflect the need
11   for or use of an assistance device. (AR 40.)

**D.   Analysis**

The ALJ's reasons for discounting Plaintiff's testimony generally fit into two categories: (1) her conservative treatment; and (2) medical evidence that, in the ALJ's view, undermined Plaintiff's testimony. (AR 40.)

1.   Conservative Treatment

First, the ALJ noted that, while Plaintiff was counseled on surgical options, "her treatment was no more invasive than injections." (AR 40.) An ALJ may consider a claimant's course of treatment in evaluating a claimant's subjective complaints. *See Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007) (finding evidence of conservative treatment sufficient to discount claimant's testimony regarding severity of impairment); *see also* 20 C.F.R. § 404.1529(c)(3)(iv), (v) (medication effectiveness and treatment history are relevant factors for evaluating a claimant's symptom testimony).

The ALJ erred in suggesting that Plaintiff received only conservative treatment. In addition to physical therapy and strong narcotic medication, Plaintiff received steroid and medial block injections. (AR 1039 (October 2019 lumbar injection); AR 1561 (November 2019 branch block injection report

7

indicating Plaintiff reported "0% reduction of pain" post-procedure); AR 1569 (April 2019 injection report, noting Plaintiff "reported pre-op pain 8/10 and 0/10 pain post procedure.").)

Such treatment is not considered conservative. *Revels v. Berryhill*, 874 F.3d 648, 667 (9th Cir. 2017) (rejecting ALJ's characterization of facet, epidural, and steroid injections as "conservative"); *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) ("[W]e doubt that epidural steroid shots to the neck and lower back qualify as 'conservative' medical treatment.") *Grant v. Bisignano*, No. 2:24-CV-04033-SK, 2025 WL 2673630, at *2 (C.D. Cal. Aug. 11, 2025) ("[T]he use of narcotic medication alongside epidural steroid injections, trigger point injections, and nerve block injections—as plaintiff endured here—is not considered conservative treatment.") (internal citations omitted); *Christie v. Astrue*, No. CV 10-3448-PJW, 2011 WL 4368189, at *4 (C.D. Cal. Sept. 16, 2011) (finding that though narcotic pain medication and steroid injections "may not be the most aggressive [treatment options] available [for degenerative disc disease], like surgery, for example, they are certainly not what the Court would categorize as conservative."). Indeed, Plaintiff's doctors did not consider the injections to be conservative. The doctor performing a branch block injection noted that Plaintiff had "*already* been treated conservatively without lasting results," and that "a medial branch block [injection] would give both diagnostic and therapeutic benefits." (AR 1561 (emphasis added).)

The authority Defendant cites to show that Plaintiff's treatment was conservative is not persuasive (Def. Br. at 4), because those cases presented distinguishable facts: Plaintiff here had mixed results from multiple injections and medication with only partial relief, and was recommended more aggressive treatment like branch block injections (and surgery, though ultimately she deemed that option too risky). Those were not the facts of the cases cited by Defendant. *Cf. Chavez v. Colvin*, No. EDCV 14-1547-JPR, 2015 WL 5923537, at

8

*5 (C.D. Cal. Oct. 9, 2015) (finding treatment was "conservative" where there was no recommendation of surgery and Plaintiff "responded well" to injections); *Dianna K. v. Saul*, No. 5:18-CV-02216-JDE, 2019 WL 13037009, at *4 (C.D. Cal. Aug. 19, 2019) ("Plaintiff received [one] injection to her right hip in September 2015, but a single or occasional steroid injection may be considered conservative treatment."). In any event, the cases Defendant cites are not binding, and on these facts, the Court concludes that *Revels* and *Garrison* point to a different result.

To the extent the ALJ believed that Plaintiff's treatment was conservative because she declined a more aggressive surgical option, that would also be incorrect. (AR 40 (citing AR 685).) Plaintiff's doctor mentioned the possibility of surgery, but after hearing the significant risks involved, Plaintiff was hesitant to proceed and wanted to try injections first. (AR 692, 805-06.) Her doctor indicated that that was a "reasonable" choice. (AR 692.) The Court will not hold against Plaintiff the medically reasonable choice not to pursue an option that, in her view, was riskier than it was worth.

In sum, the ALJ erred in discounting Plaintiff's testimony based upon Plaintiff's conservative treatment.

### 2. Medical Evidence

The ALJ also pointed to several data points suggesting he viewed Plaintiff's testimony as not fully consistent with the medical evidence in the record. (AR 40.) These reasons does not provide substantial evidence for his conclusion, however, for several reasons.

As an initial matter, the ALJ's explanation on this point does not meet the standard set by the Ninth Circuit: An ALJ is required to "identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) (emphasis added). Here, however, the ALJ merely summarized the medical

9

1 records, concluded the medical record did not support an RFC more limited than
2 the one he assessed, and provided a few data points. He did not "identify the
3 testimony [he] found not credible [and] did not link that testimony to the
4 particular parts of the record supporting [his] non-credibility determination."
5 *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015). His failure to do so
6 was error. *Id.*

7 Even overlooking that fault, the ALJ's decision still lacks the support of
8 substantial evidence. First, while the ALJ cited dozens of exhibits reflecting the
9 fact that Plaintiff did not use an assistive device (AR 40), Plaintiff herself
10 testified that she did not use an assistive device because it did more harm than
11 good (AR 77); medical records to that effect therefore do not undermine her
12 testimony.

13 The ALJ also cited a single instance of negative straight leg raise, in
14 January 2019, but the record is replete with instances where the straight leg
15 raise test was positive. (AR 825, 1228, 1392, 1415, 1566.) Indeed, the ALJ
16 himself pointed to more positive straight leg tests than negative ones in his
17 summary of the medical record. (AR 40-41.) An ALJ is not permitted to cherry
18 pick those records which support his conclusion and ignore other similar records
19 that undermine his conclusion. *Holohan v. Massanari*, 246 F.3d 1195, 1207-08
20 (9th Cir. 2001) (finding that an ALJ erred in selectively relying on some entries
21 in a plaintiff's records while ignoring others). And because a positive straight
22 leg raise test is indicative of back pain, *Garibay-Canela v. Astrue*, No. CV 09-
23 4332 AJW, 2010 WL 4703857, at *3 n.3 (C.D. Cal. Nov. 8, 2010), the many
24 positive straight leg tests in the record support, and do not undermine,
25 Plaintiff's testimony.

26 The ALJ further stated that Plaintiff's examinations, both before and
27 after her date last insured, generally reflected normal gait and station, and full
28 sensation. (AR 40.) But it is unclear what portion of Plaintiff's testimony those

findings undermine. Plaintiff testified that her back pain prevented her from being on her feet for more than 15-30 minutes. (AR 76-77.) A normal gait "is not a measure of the length of time one can walk and stand"; it measures whether one's gait is normal as "observed for a few minutes within the confines of an examining room." *Rosemary M. H. v. Comm'r of Soc. Sec.*, No. C22-5993-BAT, 2023 WL 6307249, at *2 (W.D. Wash. Sept. 28, 2023). As such, "[n]ormal gait findings do not necessarily contradict sedentary limitations or Plaintiff's ability to walk." *Mary C. v. Comm'r of Soc. Sec.*, No. C24-5070-SKV, 2024 WL 4404109, at *3 (W.D. Wash. Oct. 4, 2024).

The same goes for normal station and sensation and lack of distress. Station is a neurological test (*e.g.*, AR 812, 957), which tests neurological causes of balance issues. *See* 908400 station test, Stedmans Medical Dictionary (station test synonymous with Romberg sign); 820310 Romberg sign, Stedmans Medical Dictionary (a neurological test determining steadiness and revealing potential proprioception loss). Sensation refers to the ability to perceive different kinds of touch. *Harris v. Comm'r of Soc. Sec.*, No. 1:22-CV-01099-CEH, 2023 WL 4685370, at *4 (N.D. Ohio July 21, 2023) (describing sensory examination as testing things like perception of hot and cold, vibration, pinpricks, etc.). It is not obvious to the Court what connection those tests have to the credibility of Plaintiff's testimony about the severity of her back pain, and the ALJ does not explain the logical connection. *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011) (faulting ALJ for "fail[ing] to build the requisite 'logical bridge' between the evidence and her conclusion"); *see also Tessa B. v. Saul*, No. 20 C 93, 2020 WL 6487189, at *2 (N.D. Ill. Nov. 4, 2020) (normal sensation and strength not clearly inconsistent with record indicating limitations in plaintiff's ability to walk for more than 20 minutes at a time).

As for the ALJ's note that Plaintiff's examinations did not reflect "distress," many of the records in fact report no *acute* distress. (*See, e.g.*, AR 40

11

(citing AR 682 ("no acute distress"), 812 ("NAD"), 956 ("NAD"), 1021 ("no acute distress"), 1055 ("no acute distress"), 1446 ("no acute distress").) Courts have doubted the probative value of that description: "To physicians, 'No Acute Distress' means that your patient will probably not become unstable in the next 5 minutes." *Wanserski v. Colvin*, No. 1:14-CV-1033-DKL-JMS, 2015 WL 5692521, at *7 (S.D. Ind. Sept. 28, 2015). It says little about claims of chronic pain—which, by definition, is not "acute" in nature. *Nowak v. Saul*, No. 20-CV-1088-SCD, 2021 WL 1263753, at *10 (E.D. Wis. Apr. 6, 2021) (collecting cases).

Stepping back from the individual tests cited by the ALJ, a bigger question is why the ALJ viewed tests about balance, sensation, and gait as more probative than the records the ALJ himself noted—and the many more than exist in the record—which reflect spasms, tenderness pain with motion, pain on palpation, etc. (*E.g.*, AR 682, 1188, 1350.) Plaintiff's MRI reflected significant deficiencies, and a specialist viewed her condition as serious to recommend surgery. Had the ALJ provided a reason for crediting the results that he did, and had that reason been such that "a reasonable mind might accept as adequate to support a conclusion.'" *Biestek*, 587 U.S. at 103, this Court would have to credit it. Without such an explanation, however, the Court is left to wonder why the ALJ reached the conclusion he did.

Defendant says that Plaintiff's argument amounts to a bid to reweigh conflicting evidence, and that weighing evidence is the ALJ's province. (Def. Br. at 7.) It certainly is the ALJ's job to weigh conflicting evidence, and if the ALJ had discharged his obligation to explain *why*, for example, he viewed the normal gait and station tests as undermining Plaintiff's testimony, the result here may have been different. As it is, the Court is left with a string of data points from the record, many of which do not intuitively undermine Plaintiff's testimony. If the ALJ saw something in them that the Court does not, it was incumbent on him to provide a brief explanation of why they undermined Plaintiff's testimony.

12

Without that, the Court cannot find that the ALJ's reasons are supported by substantial evidence.

## IV.  REMEDY

Plaintiff requests the Court remand this case for an immediate award of benefits or, alternatively, for further proceedings. (Pl. Brief at 15.) Remand (as opposed to an outright grant of benefits) is appropriate as the circumstances of this case suggest that further administrative proceedings could remedy the ALJ's errors. *See Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) ("Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits."); *Treichler*, 775 F.3d at 1101, n.5 (remand for further administrative proceedings is the proper remedy "in all but the rarest cases"); *Harman v. Apfel*, 211 F.3d 1172, 1180-81 (9th Cir. 2000) (remand for further proceedings rather than for the immediate payment of benefits is appropriate where there are "sufficient unanswered questions in the record").

## V.  CONCLUSION AND ORDER

For the reasons above, it is therefore ordered that: (1) Plaintiff's request for remand (ECF 11) is **granted**; and (2) the decision of the Commissioner is **reversed** and this matter is **remanded** pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative for further administrative proceedings consistent with this Opinion and Order.

DATED: December 10, 2025

_____
HON. BRIANNA FULLER MIRCHEFF
UNITED STATES MAGISTRATE JUDGE